IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IKE KHAMISANI and | § | |
| K.B. AFFORDABLE, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-3485 |
| | § | |
| ERIC HOLDER, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff K.B. Affordable, Inc.'s ("KBA")[2] Motion for Summary Judgment (Doc. 86) and Defendants' Motion for Summary Judgment (Doc. 87). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff KBA's motion and **GRANTS** Defendants' motion.

## I.  Case Background

Plaintiff KBA and Ike Khamisani[3] filed this action challenging adverse administrative decisions by the Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS")

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Doc. 11.

[2]    Ike Khamisani was a movant for summary judgment at the time the motion was filed but, since then, has been dismissed from the lawsuit.  See Doc. 101, Am. Mem. Op. Dated Mar. 14, 2013.

[3]    Ike Khamisani's full name is "Mohammed Iqbal Khamisani."  See CAR Certification of Docs.  The court refers to him throughout this memorandum opinion as "Ike Khamisani."

regarding the denials of a Form I-140 Petition for Alien Worker ("I-140") filed by Plaintiff KBA on behalf of Ike Khamisani and a Form I-485 Application to Register Permanent Residence or Adjust Status ("I-485") filed by Ike Khamisani, which required the approval of the I-140.

## A.  **Factual Background**

Plaintiff KBA, which is in the furniture retail and car rental business, was incorporated in Texas on February 12, 2004, by Mohammad[4] Z. Khamisani, its only director at the time.[5]  Eight days later, Khamisani Brothers (Pvt) Limited, a Pakistani business, purchased all of Plaintiff KBA's common stock.[6]  In March 2004, Mohammad Z. Khamisani incorporated Khamisani Business Services Inc. in the State of Texas, listing himself as the only director.[7]  On May 1, 2004, Plaintiff KBA agreed to buy AZ Affordable Furniture, a d/b/a of Uzair Zavary that was being operated at two locations in Phoenix, Arizona.[8]

Ike Khamisani, on behalf of Khamisani Business Services Inc.,

---

[4]     This man's first name is spelled variously as "Mohammad," "Mohammed," and "Muhammad" in the record.  Compare, e.g., Certified Admin. R. ("CAR") 4 with CAR 194 with CAR 466.  For purposes of this memorandum opinion, the court spells the name "Mohammad," as it appears under his signature on the I-140, which differs from the spelling of his name on the first page of the petition.  Compare CAR 2 with CAR 4.

[5]     CAR 3, 73, 75, 76, 78.  In its I-140, Plaintiff KBA indicated that it had been established in August 2004, an apparent error.  See CAR 3.

[6]     See CAR 97.

[7]     See CAR 468-70.

[8]     See CAR 193-94.

and Mohammad Z. Khamisani, on behalf of Plaintiff KBA, agreed to enter a joint venture as of June 2004 for the purpose of expanding the business in furniture sales and car rentals.[9]  On June 9, 2004, Khamisani Brothers Group[10] sold Plaintiff KBA to NET-LINE (PK) ("NL"), a Pakistani information technology business whose sole proprietor was Mohammed Iqbal Zavary.[11]

Ike Khamisani, a citizen of Pakistan who was born in India, entered the United States on June 19, 2004, on a nonimmigrant visitor's visa that authorized him to remain in the United States until December 18, 2004.[12]  On December 13, 2004, Plaintiff KBA filed an I-140 on behalf of Ike Khamisani, seeking a multinational executive or manager visa in order to employ him as "Director, Business Development."[13]

In a letter dated December 15, 2004, Mohammad Z. Khamisani explained that Plaintiff KBA was being managed by him as President/Director, Marketing, and Aslam Qasim as Management

---

[9]    See CAR 465-66.

[10]   The sales agreement reflects that Khamisani Brothers Group was "doing business in the names of Khamisani Brothers pvt limited at Karachi & Pak Arab Enterprises at Hyderabad."  CAR 13.

[11]   See CAR 13-15, 19.  According to Mohammad Z. Khamisani, Mohammed Iqbal Zavary established the furniture business in California 1996.  See CAR 6. He relocated to Arizona in July 1999 and established Affordable Furniture Inc. See CAR 6-7.  In January 2003, Mohammed Iqbal Zavary sold the Arizona operations to Uzair Zavary, who apparently renamed it AZ Affordable Furniture.  See CAR 7.

[12]   See CAR 2.

[13]   See CAR 2-4.

Consultant.[14]   Mohammad Z. Khamisani stated that Plaintiff KBA planned to expand the business into a chain of in-mall stores and to open stores in Arizona, California, and Texas over the subsequent five-year period.[15]   Ike Khamisani was responsible for business development at NL at the time of the I-140 and had been the Director, Business Development, of the Khamisani Group since June 1994.[16]   At Plaintiff KBA, he would:

- Responsible for the expansion of [Plaintiff KBA] within the US;
- [sic]Plan and develop the US investments, analyze market trends, set strategic planning goals and be responsible for the sales efforts of furniture retail and car rental business;
- Responsible for operating the business in all material aspects including payments of all debts, payment of employee salaries, employee taxes, and keep [sic] the business and its activities in full compliance with all licensing regulations of [Plaintiff KBA];
- Responsible for formulating policies regarding sales and marketing of furniture retail and car rental business;
- Responsible for hiring and firing personnel in the sales and marketing department of [Plaintiff KBA.][17]

On a document entitled "Functional Flow Chart for the Beneficiary," Plaintiff KBA listed Mohammad Z. Khamisani as its President/Director, Marketing, and explained his duties, but did

---

[14]   CAR 7.

[15]   <u>See</u> CAR 7.

[16]   <u>See</u> CAR 8.

[17]   CAR 8.

not include any reference to Ike Khamisani.[18] On an organizational chart for Khamisani Business Services, Inc., Ike Khamisani was listed as the "Director Business Development," the ultimate supervisor for five employees and "Various Cleaners, Drivers and Misc Contractors."[19] On an organizational chart for Plaintiff KBA, Yousuf Kamran Khamisani was listed as Director, Business Development.[20] Ike Khamisani was not on that chart.[21]

In May 2005, the USCIS sent a request for evidence to Plaintiff KBA, explaining that it needed documentation reflecting the following: 1) the purchase/sale of the foreign company and the U.S. company; 2) an offer to Ike Khamisani of permanent employment with salary listed; and 3) proof that Plaintiff KBA was solvent and able to pay the salary, including tax returns for Plaintiff KBA and AZ Affordable Furniture.[22] Plaintiff KBA responded by letter and over one hundred pages of exhibits.[23] The letter provided a narrative summarizing the facts and explaining the previously submitted exhibits.[24] Among other information and legal argument, the letter stated that AZ Affordable Furniture had been in business

---

[18] See CAR 150.

[19] CAR 175.

[20] CAR 176.

[21] See id.

[22] CAR 488.

[23] See CAR 491-641.

[24] See CAR 491-96.

for about eight years prior to Plaintiff KBA's acquiring it.[25]

On August 30, 2005, the USCIS issued a letter explaining its intent to deny the I-140 on the basis that Plaintiff KBA had not been in business for at least one year prior to filing the I-140, that it could not verify its solvency and ability to pay the offered wage, and that discrepancies existed in the record concerning the number of employees working for Plaintiff KBA and the duties to be performed by Ike Khamisani.[26]  The letter allowed thirty days for Plaintiff KBA to submit evidence to counter the above findings, specifically requesting "a detailed description of the beneficiary's job duties and the percentage of time spent on each task per week."[27]

In a letter dated August 11, 2005,[28] Plaintiff KBA responded with additional documentation attached.[29]  Among other information and legal argument, the letter stated that Ike Khamisani had been working in business development for both the furniture and the car rental businesses.[30]  An organizational chart for Plaintiff KBA, which was submitted with the letter, showed Ike Khamisani,

---

[25]     CAR 491-92.

[26]     CAR 642-44.

[27]     CAR 642, 643.

[28]     This date must be a typographical error as the letter to which it responded was dated August 30, 2005.  See CAR 642.

[29]     See CAR 649-771.

[30]     See CAR 653-54.

6

"Director Business Development," as one of four directors reporting to Mohammad Z. Khamisani, "President/Director Marketing."[31] A total of seventeen employees, as well as contract loaders, drivers, and cleaners, were listed as ultimately reporting to the group of four directors.[32] Plaintiff KBA also provided the following details about Ike Khamisani's duties and the time allotted for each:

- Responsible for the overall expansion of [Plaintiff KBA] (Affordable Furniture) and Khamisani Business Services Inc. (Thrifty Car Rental), within the US with regard to Territories, Locations, Sales volume, Inventory volume, Product/Services line etc.; [25%]

- [sic]Plan and develop the US investments including new ventures, new territories, new locations, new products/services, analyze market trends, set strategic planning goals and be responsible for the sales efforts of furniture retail/wholesale and car rental business; [20%]

- Responsible for operating the business in all material aspects including payments of all debts, payment of employee salaries, employee taxes, and keep [sic] the business and its activities in full compliance with all licensing regulations of [Plaintiff KBA] and Khamisani Business Services Inc.; [10%]

- Responsible for formulating policies and guidelines regarding sales and marketing of furniture retail and car rental business; [20%]

- Responsible for hiring and firing personnel in the sales and marketing department of [Plaintiff KBA] and Khamisani Business Services Inc.; [15%]

- Responsible to keep management updated by attending

---

[31]   CAR 764.

[32]   Id.

7

> conventions/shows/seminars/conferences/exhibitions and interacting with principles/suppliers/manufacturers with regard to upcoming products/services and trends thereon; [5%]
>
> - Responsible for offering, negotiating and formulating corporate accounts agreements for rental car services[.][5%][33]

On November 14, 2005, the director of the USCIS's Texas Service Center issued her decision denying Plaintiff KBA's I-140.[34] In the explanation for the denial, the director stated that, in light of conflicting and/or invalid evidence in the record, including the indication that Ike Khamisani had engaged in unauthorized employment with Plaintiff KBA, "doubt ha[d] been shed on this case and the evidence is deemed unreliable."[35] Additionally, the director found that Plaintiff KBA failed to establish that it had been in business for one year prior to the date the I-140 was filed and that Ike Khamisani was working in an executive or managerial capacity.[36]

Plaintiff KBA filed an administrative appeal of the denial with the USCIS's Administrative Appeals Office ("AAO").[37]  In an accompanying brief, Plaintiff KBA noted an error in the denial that confused the identities of Ike Khamisani and Mohammad Z. Khamisani,

---

[33]   CAR 765-66.

[34]   See CAR 772-76.

[35]   CAR 773.

[36]   CAR 773-74.

[37]   See CAR 779.

Ike Khamisani's son.[38]   It claimed that Ike Khamisani was not
involved in unauthorized employment but "relied on others with the
requisite immigration status to work for the business and take
executive charge at the appropriate stages."[39]   In general,
Plaintiff KBA took issue with the reasons cited by the Texas
Service Center director for finding the evidence unreliable.[40]
Among the documents attached to the brief was an organizational
chart for Plaintiff KBA in which more positions were identified
than any chart previously submitted, but it did not list Ike
Khamisani in any position.[41]

On May 12, 2006, the AAO notified Plaintiff KBA that the
appeal was dismissed.[42]   The AAO provided three "independent and
alternative" reasons supporting the denial of the I-140: 1)
Plaintiff KBA had not been doing business for at least one year
prior to the date that the petition was filed; 2) Plaintiff KBA
lacked credibility, which called into question the reliability of
the claims it made in support of the I-140;[43] and 3) Plaintiff KBA

---

[38]   CAR 782.

[39]   CAR 783.

[40]   See CAR 783-88.

[41]   See CAR 824.

[42]   See CAR 990-95.

[43]   The second basis for dismissal was divided into two parts: 1) the
record lacked sufficient evidence to establish that Plaintiff KBA had the
staffing structure indicated in the organizational chart at the time it filed the
I-140; and 2) the record suggested that Ike Khamisani was being paid by Plaintiff
KBA, indicating that he was employed while lacking documentation to authorize

failed to establish that Ike Khamisani would primarily be performing duties of an executive or manager.[44]  Citing a federal district court opinion out of California, the AAO explained to Plaintiff KBA that, when the AAO denies a petition based on multiple alternative grounds, a challenge will succeed only if the petitioner can show that the AAO abused its discretion with respect to all of the enumerated grounds.[45]

## B.  <u>Procedural Background</u>

Plaintiff KBA and Ike Khamisani filed their original complaint on September 26, 2011, and, by agreement of the parties and with leave of court, amended in February 2012.[46]  They sought relief from the USCIS's decisions pursuant to the Administrative Procedures Act[47] ("APA") and the Declaratory Judgment Act[48] ("DJA").[49]  They asked the court to direct the USCIS to reverse its prior denials.[50]

Defendants answered the amended complaint on March 9, 2012,

---

employment.  <u>See</u> CAR 993-94.  Contrary to Defendant's view, the court sees this as one reason in support of the denial, not two separate reasons.

[44]    CAR 991-95.

[45]    <u>See</u> CAR 995 (citing <u>Spencer Enters. v. United States</u>, 229 F. Supp.2d 1025, 1037 (E.D. Cal. 2001), <u>aff'd</u>, 345 F.3d 683 (9th Cir. 2003)).

[46]    <u>See</u> Doc. 1, Pls.' Original Compl., Doc. 6, Jt. Mot. for Extension of Time; Doc. 7, Order Dated Dec. 9, 2011; Doc. 13, Pls.' Am. Compl.

[47]    5 U.S.C. §§ 701-706.

[48]    28 U.S.C. §§ 2201-2202.

[49]    <u>See</u> Doc. 13, Pls.' Am. Compl., ¶¶ 29, 30.

[50]    <u>See generally</u> <u>id.</u> ¶¶ 30, 32.

and, three days later, filed a motion for partial dismissal.[51]  At about the same time, Defendants submitted the Certified Administrative Record.[52]  After the parties completed briefing on the motion to dismiss, they filed cross-motions for summary judgment.[53]

The court addressed the motion for partial dismissal in a prior memorandum opinion, granting it in large measure.[54] Specifically, the court determined that it lacks subject matter jurisdiction to review the USCIS's decision to deny Ike Khamisani's I-485, that Ike Khamisani lacks standing to challenge the denial of Plaintiff KBA's I-140, and that U.S. Attorney General Eric H. Holder should be dismissed.[55]  The only remaining claims relate to Plaintiff KBA's challenge to the denial of its I-140.  At this time, the court directs its attention to the parties' motions for summary judgment, which address the merits of the remaining claim.

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the

---

[51]     See Doc. 18, Defs.' Answer; Doc. 19, Defs.' Mot. to Dismiss.

[52]     See Doc. 20, Notice of Filing Certified Admin. R.; Docs. 21-71, Sealed Certified Admin. R.

[53]     See Doc. 86, Pls.' Mot. for Summ. J.; Doc. 87, Defs.' Mot. for Summ. J.

[54]     See Doc. 101, Am. Mem. Op.

[55]     See id. pp. 6-13.

11

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Triple Tee Golf, Inc., v. Nike, Inc., 485 F.3d 253, 261 (5th Cir. 2007).  The summary judgment mechanism is particularly appropriate for the review of a decision of a federal administrative agency. Girling Health Care, Inc. v. Shalala, 85 F.3d 211, 214-15 (5th Cir. 1996).

> The explanation for this lies in the relationship between the summary judgment standard of *no genuine issue as to any material fact* and the nature of judicial review of administrative decisions . . . . [T]he administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with the law – that and no more.

Id. at 215 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2733 (1983))(alterations in the original).

The court is authorized to review final agency decisions and to set aside any decision that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."[56]  5 U.S.C. § 706(2)(A); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  Examples of when an agency decision is arbitrary or capricious include when the agency relied on factors not intended by Congress, when it entirely failed to

---

[56]    The statute also directs the court to set aside agency actions if found to be contrary to a constitutional right, in excess of statutory jurisdiction, without proper procedural requirements, unsupported by substantial evidence in cases of hearings, or unwarranted by the facts to the extent the facts are subject to trial de novo by the court.  5 U.S.C. § 706(2).  Here, Plaintiff KBA claims that the decision was arbitrary and/or capricious.

12

consider an important aspect, or when it offered an explanation that was contrary to the evidence or completely implausible. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

The court's task is to apply the APA standard of review to the agency decision based solely on the administrative record. Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). The standard of review is narrow, requiring only that an agency "examine the relevant data and articulate a satisfactory explanation for its action." F.C.C., 556 U.S. at 513 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43).

A court should not substitute its own judgment in place of the agency's and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." F.C.C., 556 U.S. at 513-14 (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)). In other words, the court should consider only whether the decision was based on the consideration of relevant factors and whether the agency committed a "clear error of judgment." Bowman Transp., Inc., 419 U.S. at 285. "The decision need only have a rational basis and the reviewing court need not have come to the same conclusion." Boi Na Braza Atlanta, LLC v. Upchurch, 194 Fed. App'x 248, 249 (5th Cir. 2006).

### III. Analysis

13

In their motion for summary judgment, Defendants contend that the AAO did not abuse its discretion with regard to any of the separate and independent reasons supporting denial of Plaintiff KBA's I-140.  Plaintiff KBA's motion focuses on the regulatory requirement that the prospective employer have been doing business for at least one year prior to filing an I-140.  Plaintiff KBA also argues that contrary decisions in similar cases indicate that the USCIS ignored "long[-]established and well-recognized practices of prior immigration decisions" and issued a decision in this case that was arbitrary and/or capricious.[57]  In its response to Defendants' motion, Plaintiff KBA included the assertion that the AAO abused its discretion with regard to each of the reasons given for denial.  In the remainder of that brief, however, Plaintiff KBA discussed only two of the reasons.

The court addresses each of the reasons identified by the AAO, beginning with credibility and reliability, the grounds that Plaintiff essentially ignored.  After discussing all three grounds for denial, the court then turns to Plaintiff's assertion that the decision in this case was arbitrary or capricious because it was not in line with prior decisions in similar cases.

## A. <u>Credibility and Reliability</u>

The AAO found that Plaintiff KBA lacked credibility due to inconsistencies in the evidence, particularly regarding its

---

[57]     Doc. 86, Pls.' Mot. for Summ. J. p. 3.

staffing structure at the time of the petition and its employment relationship with Ike Khamisani prior to filing the petition.  The AAO pointed out two credibility/reliability problems with Plaintiff KBA's I-140: 1) the evidence did not establish that, at the time of filing the I-140, Plaintiff KBA had the staffing structure indicated on its organizational chart; and 2) the evidence indicated that Ike Khamisani was working for Plaintiff KBA and being paid while in the United States on a visitor's visa for pleasure.[58]  Defendants separately address these two problems.  As noted above, Plaintiff KBA does not address credibility/reliability at all.

The AAO provided multiple reasons for denying the I-140 and specifically identified them as independent and alternative. Therefore, in order for Plaintiff KBA to succeed in its challenge to the AAO's decision, it must establish that every reason given was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A)(instructing a reviewing court on what grounds it should set aside an agency action); see also Khamisani v. Holder, Civil Action No. H-10-0728, 2011 WL 1232906, at *8 (S.D. Tex. Mar. 31, 2011)(unpublished) (acknowledging that, when the AAO denies a petition based on multiple grounds, a challenge can succeed only if every one of the grounds violates the agency's authority).  Because Plaintiff KBA

---

[58]    See CAR 993-94.

failed to show that the AAO's credibility/reliability determination was arbitrary, capricious, or an abuse of discretion, its challenge to the AAO's decision to deny the I-140 falls short of success.

Nevertheless, the court reviews the record to determine whether each of the AAO's reasons passes muster. The court finds more than sufficient evidence to support the AAO's conclusion on credibility and reliability, specifically with regard to the two particular inconsistencies mentioned by the AAO.

The Texas Service Center noted in the "Intent to Deny" letter that the organizational chart for Plaintiff KBA directly conflicted with its quarterly federal tax returns ("941 forms") and its annual federal unemployment tax returns ("FUTA forms") with regard to the number of employees.[59] Plaintiff KBA responded that there were "no real discrepancies" and that employment levels fluctuated, but that the fluctuation was not an "indication of inconsistency or subterfuge."[60]

In her decision, the Texas Service Center director reiterated the same problem, noting that the organizational chart for Plaintiff KBA showed a larger number of employees than the federal tax forms.[61] The director further stated that it was not possible to tell from the organizational chart whether it included combined

---

[59]     CAR 643.

[60]     CAR 653.

[61]     CAR 774.

employees from all of their companies in one chart.[62]   In its
appeal, Plaintiff KBA stated:

> There are no conflicts between the organizational chart
> and the 941[] [forms].  As it was explained to the
> Service in the responses to the requests for evidence,
> the chart reflects the employees under the unified
> executive team depicted in those charts.  The operations
> encompass several operations consisting of not just
> "payrolled" employees (which would be reflected in the
> [941 forms]) but also contractors.[63]

Plaintiff KBA's explanation did little to clarify the record.
As the AAO noted in its decision on appeal, "[W]ithout documentary
evidence to support the claim, the assertions of counsel will not
satisfy the petitioner's burden of proof."[64]  The AAO found that the
additional evidence related to 2005, not to the organization and
payroll at the time the I-140 was filed.[65]

The administrative record contained multiple, undated
organizational charts for Plaintiff KBA and related entities.[66]  The
charts varied in the number of employees and in the positions held
by the employees for Plaintiff KBA.[67]  Because the organizational
charts were not dated, they could not be matched with the
corresponding federal tax forms to determine consistent reporting.

---

[62]   _Id._

[63]   CAR 786.

[64]   CAR 993.

[65]   _See_ CAR 993-94.

[66]   _See, e.g._, CAR 71, 150, 175, 176, 764, 824.

[67]   _See id._

17

The court finds it even more troubling that at least three of the four organizational charts for Plaintiff KBA did not list Ike Khamisani at all and that it appears no two of Plaintiff KBA's organizational charts are alike.[68]

The other issue raised by the AAO as causing it to deem the evidence unreliable was the indication in a letter by Mohammad Z. Khamisani that Plaintiff had been earning a salary while in the United States on a visitor visa.[69]  The AAO found that Ike Khamisani's participation with Plaintiff KBA and the related entities was "more than merely that of an investor," citing a letter dated August 12, 2005, in which Mohammad Z. Khamisani stated that Plaintiff KBA would "continue" to employ Ike Khamisani at a salary of $34,000.[70]

There is nothing arbitrary or capricious about the AAO's interpretation of this evidence; rather, its conclusion that the evidence raised doubts as to Plaintiff KBA's credibility is based on an examination of relevant data, is satisfactorily explained, and is reasonable.

**B.   "Doing Business" Requirement**

The AAO found that Plaintiff KBA had not been doing business for at least one year prior to filing the I-140 on Ike Khamisani's

---

[68]   See CAR 150, 176, 764, 824.

[69]   CAR 994.

[70]   CAR 994; see also CAR 532.

18

behalf.  Defendants contend that decision is correct, but Plaintiff contends that the AAO misinterpreted the regulation.  The point of contention between the parties is the AAO's interpretation that "doing business" requirement applies to the petitioner and not to the established business that the newly formed petitioner purchased.

A federal agency's interpretation of statutory or regulatory language under its administration is "to be accepted unless Congress has spoken directly on the issue," even if the language is ambiguous.  Defensor v. Meissner, 201 F.3d 384, 386 (5th Cir. 2000).  According to the regulations, "A United States employer may file a petition on Form I-140 for classification of an alien . . . as a multinational executive or manager."  8 C.F.R. § 204.5(j)(1).  The petition must be supported by a statement from an authorized official of the petitioning U.S. employer which demonstrates, among other things, that "[t]he prospective United States employer has been doing business for at least one year."  8 C.F.R. § 204.5(j)(3)(i)(D).  The statute defines the term "doing business" as "the regular, systematic, and continuous provision of goods and/or services by a firm, corporation, or other entity [that] does not include the mere presence of an agent or office."  8 C.F.R. § 204.5(j)(2).

Plaintiff KBA puts a tortured spin on the definition of "doing business" by distinguishing the petitioner from the U.S. employer.

As Plaintiff KBA acknowledges, the USCIS is concerned with the viability of the U.S. employer.[71] Yet, Plaintiff KBA contends it is the petitioner in this case and the business it purchased is the U.S. employer. According to Plaintiff KBA, "'Employer' connotes a broader concept in the employment relationship; to an employee going to work day by day, his employer remains the same regardless of changes in EIN (employer identification number), IRS findings, corporate name, ownership, etc., provided the employee continues in his job duties and receives similar wages."[72] Plaintiff KBA argues that regulatory intent and recognized business concepts and practices favor its interpretation. Plaintiff KBA admits that it was incorporated only three and one-half months prior to filing the I-140, but argues that the prior business owner had been in operation for more than eight years. Plaintiff KBA's comparisons to the corporate world and to other immigration categories are simply not factually comparable.

The court finds nothing arbitrary or capricious in the AAO's interpretation of the applicable provision. The regulations very clearly state that a U.S. employer may file a petition on behalf of an alien it seeks to employ as a multinational executive or manager. 8 C.F.R. § 204.5(j)(1). The regulations also explain that the "prospective employer in the United States is the same

---

[71]    See Doc. 86, Pls.' Mot. for Summ. J. p. 9 (citing the comments to 8 U.S.C. § 204.5).

[72]    Id. p. 7.

employer" or a related entity of the foreign employer.  8 C.F.R. §
204.5(j)(3)(i)(C).  It is the prospective employer who must have
been doing business for at least one year.  8 C.F.R. §
204.5(j)(3)(i)(D).  Even the I-140 itself indicates that the
petitioner and the employer are one and the same where it seeks
"[a]dditional information about the petitioner" in part five of the
form.[73]  The first question asks for the type of petitioner and
offers three choices: employer, self, and other.[74]  On the I-140 at
issue here, Plaintiff KBA listed information about itself as
employer, not information about AZ Affordable Furniture.[75]

The record evidence shows that Plaintiff KBA was incorporated
in February 2004, purchased AZ Affordable Furniture in early May
2004, and entered a joint venture in the furniture sales and car
rental businesses with Khamisani Business Service in June 2004,
shortly after the latter company's creation.  Khamisani Brothers
Group sold Plaintiff KBA to a Pakistani company in June 2004.
Plaintiff KBA filed the instant I-140 in December 2004.  AZ
Affordable Furniture was not a predecessor of Plaintiff KBA; it was
not a situation of AZ Affordable Furniture changing its name and
continuing to do business as it had for a number of years.
Plaintiff KBA was a brand new entity that, for nearly two months,

---

[73]   See CAR 3.

[74]   See id.

[75]   See id.

21

was not engaged in any course of business.  Then, it purchased two furniture stores from AZ Affordable Furniture and immediately expanded into the car rental business.  There is simply no evidence that AZ Affordable Furniture was the prospective employer of Ike Khamisani.

The AAO's reading of the regulations and application to the facts is reasonable and leaves no room for finding the decision arbitrary or capricious.

C.  **Executive or Managerial Capacity**

The AAO found that Plaintiff KBA failed to establish that Ike Khamisani would primarily be performing duties of an executive or a manager.  Defendants argue that this conclusion is supported by substantial evidence.  Plaintiff KBA contends that it satisfied its burden by including sufficient detail regarding Ike Khamisani's daily responsibilities as "Director, Business Development."

The applicable regulation defines "executive capacity" and "managerial capacity:"

> Executive capacity means an assignment within an organization in which the employee primarily:
>
> (A) Directs the management of the organization or a major component or function of the organization;
>
> (B) Establishes the goals and policies of the organization, component, or function;
>
> (C) Exercises wide latitude in discretionary decisionmaking; and
>
> (D) Receives only general supervision or direction from higher level executives, the board of directors, or

22

stockholders of the organization.

Managerial capacity means an assignment within an organization in which the employee primarily:

(A) Manages the organization, or a department, subdivision, function, or component of the organization;

(B) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(C) If another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or, if no other employee is directly supervised, functions at a senior level with the organizational hierarchy or with respect to the function managed; and

(D) Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

8 C.F.R. § 204.5(j)(2); see also 8 U.S.C. § 1101(a)(44). A first-line supervisor does not qualify as an executive or manager under the guidelines "merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional." 8 U.S.C. § 1101(a)(44)(A)(iv); 8 C.F.R. § 204.5(j)(4)(I).

The petitioner must furnish a job offer that indicates that the alien is to be employed in an executive or managerial capacity, and the "letter must clearly describe the duties to be performed by the alien." 8 C.F.R. § 204.5(j)(5). The burden of proof for establishing that the beneficiary is to be employed in an executive or managerial capacity falls on the petitioner. See 8 U.S.C. § 1361 (placing the burden on one applying for a visa or other

document required for entry).

In the "Intent to Deny" letter, the Texas Service Center sought "a detailed description of [Ike Khamisani's] job duties and the percentage of time spent on each task per week."[76]  Plaintiff KBA responded with a list of seven duties with percentages indicated.[77]  Based on the Texas Service Center director's overall finding that the evidence was unreliable, she found that the evidence did not establish that the position was executive or managerial and that Plaintiff KBA failed to meet its burden on this requirement.[78]  On appeal, the AAO addressed the duties that Plaintiff KBA assigned Ike Khamisani in detail, stating:

> In the instant matter, while the petitioner provided a percentage breakdown of the beneficiary's responsibilities, it failed to identify the specific duties the beneficiary would perform on a daily basis. For example, the petitioner stated that 25% of the beneficiary's time would be devoted to expanding the petitioner's existing business.  However, there is no indication as to the actual duties involved in such expansion.  The petitioner also indicated that an additional 20% of the beneficiary's time would be allotted to planning and developing the petitioner's U.S. investments, which would include seeking out new locations, analyzing market trends and setting sales goals.  However, there is no indication that planning and developing investments is in any way different from expanding the petitioner's business.  The petitioner reiterated the beneficiary's responsibility for formulating policies and setting sales goals and attributed another 20% of the beneficiary's time to this unspecified set of duties.  Specifics are clearly an

---

[76]    CAR 643.

[77]    See CAR 765-66.

[78]    See CAR 774-75.

important indication of whether a beneficiary's duties are primarily executive or managerial in nature; otherwise meeting the definitions would simply be a matter of reiterating the regulations. . . . In the instant matter, however, at least 65% of the beneficiary's time would be spent performing duties that are entirely undefined.   As such, the AAO cannot affirmatively determine that the beneficiary would primarily perform duties of a qualifying nature.[79]

In <u>Khamisani v. Holder</u>, a sister court addressed a very similar case in which Plaintiff KBA was seeking to employ Shaheen Khamisani in the position of "Director of Business Development." <u>Khamisani</u>, 2011 WL 1232906, at **1, 5.  During the petition process for Shaheen Khamisani, Plaintiff KBA, as petitioner, identified twelve responsibilities for her, four of which are very similar to ones that make up eighty percent of Ike Khamisani's proposed work week in this case.  <u>See</u> <u>id.</u> at *5.  The Nebraska Service Center requested additional information regarding her duties, and Plaintiff KBA provided more detail.  <u>Id.</u> at *6.  The Nebraska Service Center found that the identified duties did not meet the definition of executive or managerial and found that Plaintiff KBA did not meet its burden of proof.  <u>Id.</u>  The AAO affirmed the decision finding that Plaintiff KBA "failed to sufficiently clarify the specific tasks [Sheehan Khamisani] would perform or to otherwise document what proportion of [her] duties would be managerial or executive in nature in relation to the organizational hierarchy, as opposed to other non-qualifying tasks."  <u>Id.</u>

---

[79]    <u>See</u> CAR 994 (internal citations omitted).

The court found that, although the petitioner had provided additional information about the beneficiary's proposed position, it had not provided information about the actual tasks that would be required for her to carry out the board objectives in the job description and had left out any information about the portion of her duties that would be managerial versus non-managerial. <u>Id.</u> at *7. The court concluded that the general job description which the petitioner provided did not meet the requirement in the regulations of a detailed description from which a determination could be made that the actual duties would be primarily executive or managerial. <u>Id.</u> In agreeing with the AAO that the petitioner failed to meet its burden of proof on this point, the court found that the administrative agency's decision was not arbitrary, capricious, or an abuse of discretion. <u>Id.</u>

Here, Plaintiff KBA also failed to provide details about the beneficiary's actual tasks. In the letter Plaintiff KBA submitted with its I-140, Mohammad Z. Khamisani listed five general duties that would be assigned to Ike Khamisani.[80] They included expanding the business, planning and developing investments and analyzing market trends, operating the business, formulating policies, and hiring and firing personnel in sales.[81] When asked to provide more detail as to Ike Khamisani's prospective tasks, Plaintiff KBA

---

[80]   <u>See</u> CAR 8.

[81]   <u>See</u> <u>id.</u>

provided a list of seven duties including the five originally
listed with very little additional detail and two other duties that
were to occupy ten percent of his time.[82]

Based on the limited information provided by Plaintiff KBA
regarding the actual tasks (as opposed to the general duties) to be
performed by the beneficiary, the AAO did not abuse its discretion
in determining that Plaintiff KBA did not meet its burden of
proving that Ike Khamisani's position would be executive or
managerial in nature.

## D. Prior Decisions in Similar Cases

Plaintiff points to allegedly favorable USCIS decisions on I-
140s filed by members of his family.  In particular, Plaintiff
mentions Mohammad[83] H. Khamisani and Yousuf Khamisani, both of whom
had their lawful permanent resident status reinstated after they
filed lawsuits challenging the USCIS's revocation of their I-140s
and I-485s.  Defendants contend that these two relatives and others
were ultimately placed in removal proceedings in December 2010 for
reasons related to their I-140s.[84]  Plaintiff provides no response

---

[82]    See CAR 765-66.

[83]    Plaintiff KBA spells this man's first name "Mohammad," but the
spelling on the immigration documents is "Mohammed."  Compare Doc. 86, Pl. KBA's
Mot. for Summ. J. p. 3 with Doc. 77-5, Sealed Immigration Documents.  The court
uses Plaintiff KBA's spelling.

[84]    Doc. 96, Defs.' Resp. to Pl. KBA's Mot. for Summ. J. pp. 6-7 (citing
Doc. 77, Sealed Exs. to Defs.' Mot. for Leave to File a Reply Br., Immigration
Docs.).  Defendants previously submitted Notices to Appear that were served on
Mohammad H. Khamisani and Yousuf Khamisani in December 2010.  See Docs. 77-4 &
77-5, Sealed Exs. to Defs.' Mot. for Summ. J., Mohammad H. Khamisani & Yousuf
Khamisani's Immigration Docs.

to Defendants' assertion.

Unlike the case of Sheehan Khamisani, about which an unpublished court decision exists on the merits, the immigration cases of Mohammad H. Khamisani and Yousuf Khamisani do not appear to be recorded in any persuasive, much less binding, legal authority. Plaintiff KBA certainly has not cited any legally authoritative source or any competent evidence that contains information about their cases. The court lacks any information on the status of their cases since December 2010. Even if it were proper to consider the results in those cases as evidence of an arbitrary and capricious decision here, the court is without information for comparison.

## IV.  Conclusion

Based on the foregoing, the court **DENIES** Plaintiff KBA's motion for summary judgment and **GRANTS** Defendants' motion for summary judgment.

**SIGNED** in Houston, Texas, this 22nd day of March, 2013.

Nancy K. Johnson
United States Magistrate Judge

28